## STATE OF CONNECTICUT *v.* ANONYMOUS (83–FG)* (9475)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued May 6—decision released July 26, 1983

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 3161, the names of the parties involved in this appeal are not disclosed and the records and briefs will not be distributed to the various libraries of the state. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.      Reporter of Judicial Decisions

*Daniel D. Skuret,* with whom, on the brief, was *Michael Moher,* for the appellant (defendant).

*Katherine J. Lambert,* deputy assistant state's attorney, with whom, on the brief, was *John Durham,* assistant state's attorney, for the appellee (state).

SHEA, J. The defendant was found guilty of being a youthful offender pursuant to General Statutes § 54-76g[1] upon the first count of an information charging theft of a firearm in violation of General Statutes § 53a-212[2] and also upon the second count charging

[1] "[General Statutes] Sec. 54-76g. JUDGMENT OF YOUTHFUL OFFENDER STATUS. If the defendant enters a plea of guilty to the charge of being a youthful offender or if, after trial, the court finds that he committed the acts charged against him in the information or complaint, the court shall adjudge the defendant to be a youthful offender and the information or complaint shall be considered a nullity and of no force or effect."

[2] "[General Statutes] Sec. 53a-212. STEALING A FIREARM. CLASS D FELONY. (a) A person is guilty of stealing a firearm when, with intent to deprive another of his firearm or to appropriate the same to himself or a third party, he wrongfully takes, obtains or withholds a firearm, as defined in subsection (19) of section 53a-3."

The substituted information charged the defendant in the first count with having committed "the crime of YO (having committed theft of firearm P.A. 77-217) at Oxford on or about 3/24/77 in violation of General Statute No. 54-76b." Public Acts 1977, No. 77-217, now designated General Statutes § 53a-212, first became effective on October 1, 1977. The alleged date of the offense, March 24, 1977, was the date on which the owner of the shotgun involved discovered that his entire gun collection had been stolen. No claim

possession of a sawed-off shotgun in violation of General Statutes § 53a-211.[3] A third count charging larceny in the third degree in violation of General Statutes § 53a-124 was dismissed.[4] Concurrent sentences were imposed on each count.[5] In his appeal from the judgment the defendant has stated twelve separate claims of error which we have summarized as presenting four issues: (1) whether there was sufficient evidence to support the findings of theft of a firearm and of possession of a sawed-off shotgun; (2) whether the subject of the offenses, the shotgun, was properly admitted into evidence; (3) whether certain statements of a prosecution witness made before trial were admissible to corroborate his testimony; and (4) whether the notes and the report of the investigating

has been raised by the defendant that Public Acts 1977, No. 77-217 was not effective at the time the crime is alleged to have occurred. Our disposition of this charge renders it unnecessary to consider this discrepancy further.

[3] "[General Statutes] Sec. 53a-211. POSSESSION OF A SAWED-OFF SHOT-GUN OR SILENCER: CLASS D FELONY. (a) A person is guilty of possession of a sawed-off shotgun or a silencer when he owns, controls or possesses any sawed-off shotgun that has a barrel of less than eighteen inches or an overall length of less than twenty-six inches or when he owns, controls or possesses any silencer designed to muffle the noise of a firearm during discharge.

"(b) The provisions of this section shall not apply to persons, firms, corporations or museums licensed or otherwise permitted by federal or state law to possess, control or own sawed-off shotguns or silencers.

"(c) Possession of a sawed-off shotgun or a silencer is a class D felony."

[4] This charge was dismissed because the state offered no evidence of the value of the shotgun which was the subject of the larceny. The state did not claim that the defendant should be found guilty of the lesser included offense of larceny in the fourth degree in violation of General Statutes (Rev. to 1981) § 53a-125. State v. Scielzo, 190 Conn. 191, 205, 460 A.2d 951 (1983); State v. Coston, 182 Conn. 430, 436, 438 A.2d 701 (1980); State v. Saracino, 178 Conn. 416, 421, 423 A.2d 102 (1979); State v. Grant, 177 Conn. 140, 146-47, 411 A.2d 917 (1979).

[5] No question has been raised about the propriety of imposing more than one sentence where a defendant has been adjudicated a youthful offender for several criminal violations. See General Statutes § 54-76j. Since the sentences in this case were both identical and concurrent, the practical effect was the same as if a single sentence had been imposed.

police officer should have been disclosed to the defendant after completion of the officer's direct testimony in accordance with Practice Book § 752. We find that there was insufficient evidence to support the charge of theft of a firearm. We also conclude that the court should not have denied access to the notes and the report of the officer without making the preliminary determinations necessary to comply with Practice Book §§ 752 and 753 and remand for further proceedings relating only to the charge of possession of a sawed-off shotgun.

There is no significant dispute about the facts which the trial court might reasonably have found from the evidence.[6]

On March 3, 1978, state police officer John Della Volpe interviewed Douglas Herriott, who had been arrested by the Seymour police department and was being questioned about local burglaries in some of which guns had been taken. Herriott disclosed that he had a friend, the defendant, who had said that he possessed a sawed-off shotgun. The officer requested Herriott to attempt to obtain this gun.

The next day Herriott went to the defendant, whom he had known for about three years, and asked to borrow the sawed-off shotgun which the defendant had mentioned previously. The defendant gave him a white plastic bag that contained the gun, disassembled into three parts and wrapped in a paper sack. As a result

---

[6] In this case, judgment of conviction was rendered on October 18, 1978, and the trial court filed a finding on May 16, 1979. "Concerning trials to the court where the trial judge filed a finding prior to July 1, 1979, the rules for the supreme court effective July 1, 1978, apply." Practice Book § 3166. The defendant has complied with those rules by filing an assignment of errors. See Practice Book § 3060W. Our statement of the facts includes some of the corrections in the finding requested by the defendant which the state does not appear to contest.

of a telephone call, Della Volpe went to Herriott's home and examined the gun, which was still disassembled in the bag. The officer examined each of the three pieces of the gun, i.e., the barrel, the check plate and the stock, and he found the same serial number on each piece. He recorded this number and returned the bag containing the disassembled gun to Herriott, who kept it in the closet of his room. He usually kept his room locked.

On March 21, 1978, Della Volpe, who had learned from a computer check that the gun was reported to have been stolen in Kentucky,[7] returned to Herriott's home to obtain the gun. Herriott removed the bag containing the gun from his closet and brought it to the officer, who then requested that Herriott accompany him to the state police barracks. There Herriott gave a written statement concerning his knowledge of the gun.

At the barracks Della Volpe measured the double barrel of the shotgun and found it to be sixteen inches in length.[8] He also learned of a burglary which had occurred in Oxford, Connecticut, on March 24, 1977, in which several guns had been stolen, including a double-barrel shotgun. The victim of the burglary, Frank Yarmosh, was shown the shotgun received from Herriott and he identified it as one of his guns taken in the burglary. The shotgun was assembled and test-fired by Della Volpe, who found that it operated perfectly and was capable of discharging a shot. See General Statutes § 53a-3 (19).

---

[7] Officer Della Volpe later found out that although the serial number matched that of a gun stolen in Kentucky, that gun was of a different manufacturer.

[8] General Statutes § 53a-211 (a), the text of which is set forth in footnote 1, supra, refers to "any sawed-off shotgun that has a barrel of less than eighteen inches or an overall length of less than twenty-six inches."

## I

In assailing the sufficiency of the evidence to support his convictions for theft of a firearm and possession of a sawed-off shotgun the defendant relies upon several grounds.

## A

"A person is guilty of stealing a firearm when, with intent to deprive another of his firearm or to appropriate the same to himself or a third party, he wrongfully takes, obtains or withholds a firearm, as defined in subdivision (19) of section 53a-3."[9] General Statutes § 53a-212 (a). The trial court found that the defendant "wrongfully obtained or withheld a firearm . . . of another . . . ." We agree with the defendant that the evidence does not adequately support a finding that he wrongfully obtained or withheld the shotgun.

The state concedes that there is no direct evidence of the defendant's participation in the theft of the shotgun from the Yarmosh residence. It refers to the permissible inference that one having unexplained possession of recently stolen property is the thief. See *State* v. *Daley,* 189 Conn. 717, 723, 458 A.2d 1147 (1983); *State* v. *Kas,* 171 Conn. 127, 130, 368 A.2d 196 (1976); *State* v. *Palkimas,* 153 Conn. 555, 558, 219 A.2d 220 (1966). As it concedes, however, the lapse of almost a year between the theft and the time when the defendant was known to have the gun in his possession makes this principle of doubtful applicability.

The state also contends that, if the defendant acquired the shotgun under circumstances which in-

---

[9] General Statutes § 53a-3 (19) defines "firearm" to mean "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged."

dicated that he had committed larceny as a receiver of stolen goods in violation of General Statutes § 53-119 (8),[10] the finding of a wrongful obtaining or withholding of the stolen shotgun would be justified. We agree with this proposition, but we conclude that the evidence was insufficient to prove that the defendant knew or believed that the weapon had "probably been stolen," a necessary element of the crime of receiving stolen goods. Mere possession of property which has been burglarized is not a sufficient basis for inferring the requisite knowledge of the stolen character of the property. *State* v. *Scielzo,* 190 Conn. 191, 211, 460 A.2d 951 (1983) (*Shea, J.,* dissenting); *State* v. *Newman,* 127 Conn. 398, 401, 17 A.2d 774 (1940). There was no evidence of the circumstances under which the shotgun came into the possession of the defendant.[11] The state has failed to prove one of the essential elements for a conviction of the crime of theft of a firearm in violation of General Statutes § 53a-212 (a). To the extent that the judgment that the defendant was a youthful offender rested on his commission of that offense, it must be set aside.

B

The defendant claims three deficiencies in the evidence relating to the finding of his possession of a

[10] "[General Statutes] Sec. 53a-119. LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to: . . . (8) Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. . . ."

[11] The defendant testified at the trial that he never had possession of the shotgun. The witness Herriott testified that the defendant had informed him that he had a sawed-off shotgun, but gave no information concerning the defendant's acquisition of the gun.

sawed-off shotgun in violation of General Statutes § 53a-211 (a): (1) that the evidence of the length of the shotgun barrel was inconsistent; (2) that the shotgun was never properly identified by the state's witnesses; and (3) that there was insufficient proof that the three components inside the bag, i.e., the barrel, the catch-plate and the stock, were all parts of the same gun. Although some of these claims seem to be more pertinent to the conviction of the defendant for theft of a firearm, which we have overturned, our review of the evidence satisfies us in any event that they are utterly groundless.

Della Volpe testified that he did not measure the barrel of the shotgun when he first saw it at Herriott's home and that he did not then suspect that it was an illegal weapon. He also testified that two or three weeks afterward, when Herriott delivered the gun to him at the barracks, it appeared to be in the same condition as when he originally observed it. He said that he measured the barrel after it came into his possession and found that it was sixteen inches in length. On cross-examination he admitted that in his affidavit for an arrest warrant he had stated that the barrel measured seventeen inches. He also conceded that he had not measured the barrel recently and could not say what its present length was. On redirect he said that it appeared to be in substantially the same condition as when he measured it. On recross-examination he did not know whether the barrel had been seventeen or eighteen inches long, nor did he know its length on the day of trial. We are not convinced that the inconsistencies in the testimony of this witness rendered it so incredible as a matter of law that the trier could not find the essential fact that the shotgun barrel measured less than eighteen inches, as is necessary for a violation of § 53a-211 (a). The shotgun itself was made an exhibit

and the length of the barrel was readily ascertainable by anyone seeking to challenge the state's claim that it was less than eighteen inches long. The evidence indicated that the length of the barrel had not changed since the time when the defendant delivered the gun to Herriott. The issue of credibility was for the trier. *State* v. *Gold,* 180 Conn. 619, 647, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Holley,* 174 Conn. 22, 28, 381 A.2d 539 (1977).

The claims of the defendant that the barrel was not properly identified and that the three shotgun pieces in the bag received from Herriott may not have been parts of the same weapon completely ignores the testimony of the owner, Yarmosh, who separately identified each component, and of Della Volpe, who found the same serial number on each. Yarmosh said that he had made the stock and that his nephew had carved the representation of a pheasant which appeared thereon. He had made the firing pin and firing pin holders. He also recognized the barrel, although he estimated that it had been shortened about ten inches since the time of the burglary. He said it was a Damascus steel barrel and that it would be extremely difficult to find another barrel to fit the gun. The gun "was pretty close to being in the antique class." Della Volpe's testimony that the same serial number was found on the barrel, the check-plate and the stock was never challenged. Its truthfulness was, of course, readily verifiable because of the availability of the shotgun itself as an exhibit. He also testified that when he assembled the gun it worked perfectly.

We conclude that there was ample evidence to support the finding of the trial court that the defendant had possessed a sawed-off shotgun in violation of General Statutes § 53a-211 (a).

## II

With respect to the admission of the shotgun into evidence as an exhibit, the defendant raises three claims: (1) that there was insufficient proof of a connection between the defendant and the shotgun as well as of its chain of custody at the time it was admitted; (2) that this deficiency was not cured by evidence produced later in the trial; and (3) that the state's offer of proof regarding this exhibit restricted its use to the charge of larceny in the third degree which was subsequently dismissed.

The first witness for the state, Frank Yarmosh, testified that his entire gun collection was taken in a burglary which occurred on March 24, 1977. On May 8, 1978, he was shown a gun in the hands of the state police which he recognized as his stolen shotgun. At the trial he testified that an exhibit marked for identification was his shotgun, mentioning his fabrication of the stock and firing pin holders, as well as the shortening of the barrel since the time of the theft. The state at this point offered the shotgun as a full exhibit. The defendant objected that there was no evidence (1) that he had ever been involved with the gun; or (2) that the exhibit was in the same condition as when he had allegedly possessed it. The court conceded there would have to be a tie-up later between the exhibit and the defendant but, nevertheless, admitted it into evidence.

It is not unusual to admit an exhibit into evidence before its relationship to the issues of a case has been established. See *State* v. *Ferraro,* 160 Conn. 42, 44, 273 A.2d 694 (1970); *Antel* v. *Poli,* 100 Conn. 64, 72, 123 A. 272 (1923); Tait & LaPlante, Handbook of Connecticut Evidence § 3.4 (d). This procedure may expedite the trial, and it is ordinarily not prejudicial because the exhibit may be stricken if the necessary evidentiary

foundation is not eventually laid. It would be extraordinary to find any prejudice in such a situation, especially in a nonjury trial like this one. A fortiori, there can be no prejudice where, as we subsequently conclude, the necessary foundation is finally established. Since the defendant can point to no prejudice, we find no abuse of discretion in this slight deviation from orthodox procedure.

The facts we have narrated in discussing the defendant's claim that his conviction is unsupported by the evidence satisfy adequately the chain of custody requirement. We are not aware of any deficiency in the proof necessary to establish that the exhibit was the shotgun stolen from the Yarmosh residence. Our conclusion, however, that the defendant's involvement in any larceny was not demonstrated, renders superfluous any inquiry concerning the custody of the gun prior to the time when Herriott received it from the defendant.

"There is no hard and fast rule that the prosecution must exclude or disprove all possibility that the article or substance has been tampered with; in each case the trial court must satisfy itself in reasonable probability that the substance had not been changed in important respects." *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903 (1972). We believe that standard was met with respect to the shotgun exhibit. Herriott testified that, when he asked to borrow the sawed-off shotgun, a weapon which the defendant had previously said he possessed, he received from the defendant a bag containing the gun disassembled into three pieces. Herriott never opened the bag until after Della Volpe came to his house, when the officer removed the three components and assembled the shotgun. Della Volpe testified that on that occasion he recorded the serial number which appeared on each of the three pieces of the shotgun. He disassembled the gun and put the

pieces back into the bag before returning it to Herriott. Herriott said he never opened the bag before he delivered it to the officer about two weeks later. In the interim the bag was kept in a closet of his room which he ordinarily locked. The bag appeared to be in the same condition when he removed it from the closet to take to the police as when he placed it in the closet. He accompanied Della Volpe to the state police barracks and there he handed over the gun. After completing his inspection Della Volpe placed the gun in the evidence room of the barracks, which was kept locked, only the supervisor having a key. Della Volpe testified that the three pieces of the shotgun appeared to be substantially in the same condition at trial as when he first saw them.

The defendant stresses the fact that Della Volpe did not notice that the barrel of the shotgun had been shortened when he first saw it, raising the possibility that this might have occurred during the period of about two weeks while Herriott retained the weapon. The issue was one of credibility to be resolved by the trial court. The court could reasonably have believed Herriott's testimony that the defendant had initially mentioned having a sawed-off shotgun, that he received the bag containing the disassembled gun from the defendant in response to his request for such a weapon, and that he never opened the bag, kept it in a locked room and delivered it to the police in the same condition in which he had received it.

The additional claim of the defendant, that the shotgun was introduced only with reference to the third degree larceny charge, later dismissed, is not supported by the transcript. The state did mention larceny in the third degree as "one of the claims" and did declare that the exhibit was being offered to show that it was a gun stolen in the burglary of the Yarmosh house. The

defendant, however, never requested any restriction against the use of the exhibit as evidence upon the other two charges. His objection was confined to the lack of proof of the chain of custody and of any connection of the gun to the defendant. The court placed no limitation on the purposes for which the shotgun was admitted but expressly ordered it to be marked as a "full exhibit." When the larceny charge was dismissed after the state had rested, the defendant made no motion to strike the exhibit on the ground he now raises.

There is no error in the admission of the shotgun as an exhibit.

### III

The defendant challenges another evidentiary ruling, that a statement given to the police by Douglas Herriott was admissible to corroborate his testimony. During his direct testimony Herriott said he could not remember the specific dates of his conversations with Della Volpe and other pertinent events. After unsuccessfully attempting to refresh the recollection of the witness by the use of his signed statement to the police, the state offered that document as past recollection recorded in order to prove the dates of his two conversations with Della Volpe and the date when he received the gun from the defendant. The court admitted the statement only for the purpose of proving those three dates. On appeal the defendant does not question this ruling.

During his cross-examination of Herriott, the defendant attacked his credibility upon the grounds that he had suffered mental blackouts during the period of the events he had testified about as a result of a medication he was taking, that he had been convicted of a felony for which he had served time in jail, that other criminal charges were pending against him and that

the police had threatened to send him to jail if he did not cooperate in obtaining a conviction of the defendant. Upon redirect the state offered Herriott's statement, which previously had been admitted for a limited purpose, as a full exhibit. The court admitted the statement only as it related to the credibility of the witness. The defendant excepted to the ruling.

Although the general rule is that prior consistent statements of a witness are inadmissible, we have recognized exceptions where there is testimony of his prior inconsistent statement or where he has been impeached on the basis of bias, motive or interest. *State* v. *Dolphin,* 178 Conn. 564, 568–70, 424 A.2d 266 (1979). Where the prior consistent statement becomes admissible, it may not be used as substantive evidence of the facts contained therein, but only to rehabilitate the credibility of the witness which has been attacked. Id., 570. For this exception to apply it must be shown that the prior consistent statement was made prior to the time when the alleged bias, motive, or interest arose. Id., 571. We have indicated that a prior statement to the police is not admissible for rehabilitation of a witness alleged to have a motive to falsify where the same motive was also present at the time of the statement. *State* v. *Brown,* 187 Conn. 602, 690n, 447 A.2d 734 (1982). In this case the state has failed to establish that any of the circumstances indicating bias, which were elicited during cross-examination as detrimental to Herriott's credibility, did not also exist in the same degree at the time of his statement to the police. Since the testimony suggests no change in the interest or motivation of the witness from the time when he was first contacted by the police until the day of trial, we must reject the state's claim that the statement was admissible to refute the inference of recent contrivance on the part of the witness.

The statement, however, was admissible upon a different ground from that relied upon at trial, which we may employ to sustain the trial court's action. *State* v. *Ouellette,* 190 Conn. 84, 93, 459 A.2d 1005 (1983); *Witek* v. *Southbury,* 132 Conn. 104, 110, 42 A.2d 843 (1945). "If the witness's accuracy of memory is challenged, it seems clear common sense that a consistent statement made shortly after the event and before he had time to forget, should be received in support." McCormick, Evidence (2d Ed.) § 49, p. 105 n.88. We have previously referred favorably to this additional exception to the general prohibition against the use of prior consistent statements. *State* v. *Brown,* supra, 609n; *Thomas* v. *Ganezer,* 137 Conn. 415, 420–21, 78 A.2d 539 (1951); see annot., 75 A.L.R.2d 909, 929–30. We deem it applicable here. On cross-examination Herriott admitted that at the time of the incident he had been taking a medication which caused him to have blackouts and memory losses, and also that at the time of trial he could not remember very much about the event. Under this circumstance, where a witness concedes that his present memory is faulty, the court should have the benefit of prior statements he has made concerning the same subject matter before time and other factors have faded his recollection. *United States* v. *Keller,* 145 F. Sup. 692, 697 (D.C.N.J. 1956); *People* v. *Basnett,* 186 Cal. App. 2d 108, 120–21, 8 Cal. Rptr. 804 (1960); *People* v. *Mann,* 49 Mich. App. 454, 464–65, 212 N.W.2d 282 (1973); *State* v. *Newberry,* 39 Or. App. 119, 121–22, 591 P.2d 404 (1979); see annots., 75 A.L.R.2d 900, 929–30; 140 A.L.R. 47–49. There was no error in admitting only for the purpose of credibility the prior statement of Herriott to the police, which was made on May 20, 1978, about five months before trial, at the time he delivered the shotgun to Della Volpe.

The defendant also contends that the statement contained some references to unrelated crimes in which the defendant was involved which should not have been permitted to come before the trier. The transcript indicates that no objection was raised to the statement on that ground before it was allowed in evidence. As the prosecutor read the statement into the record he came to a portion involving the defendant in another crime and said he did not claim that part. The court explained that the statement had been admitted only for the limited purpose of judging Herriott's credibility and not for the truth of matters contained therein. The defendant objected, but took no exception. The prosecutor then read the remainder of the statement, including the portion about the unrelated crime.

Since the defendant took no exception to the ruling, as required by Practice Book § 288, he is not entitled to appellate review of this ruling. In the event that a new trial should become necessary as a result of the proceedings we order in part IV of this opinion, however, the same problem may arise again. Even though the trial court did properly limit the use of the statement to the credibility of the witness, prejudicial material, such as unrelated misconduct of an accused, not having substantial probative value upon some issue in the case should be excluded. See *State* v. *Williams,* 190 Conn. 104, 108–109, 459 A.2d 510 (1983); *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982); *State* v. *Loughlin,* 149 Conn. 21, 26, 175 A.2d 367 (1961). Judges are not wholly immune from the influence which totally irrelevant and seriously prejudicial evidence may have upon a decision. Our rules of practice prohibit the admission of evidence subject to objection, which may later be stricken, unless the parties consent. Practice Book § 289. At any future trial of this case the portion of the statement pertaining to other

misdeeds of the defendant, which the state conceded to be irrelevant, should be removed before it is made an exhibit.

## IV

The claim that the court erred in denying the defendant access to the notes and the report of Della Volpe after his direct testimony was completed is based upon Practice Book § 752, which provides as follows: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

Before commencing his cross-examination of Della Volpe the defendant asked for any notes or statements he had made regarding the incident. The state responded, somewhat ambiguously, that it had no written statement of the officer, but that there was a police report which was not under oath and which was "his work product." The court denied the defendant's request and an exception to the ruling was taken. During his cross-examination Della Volpe testified that he had made some rough notes of the incident which were available though he did not have them on his person. A further request for these notes was denied.

On appeal the state concedes that the grounds upon which it resisted production of the police report and the notes at trial, the absence of an oath and "work product," were ill-conceived. Before us the state contends (1) that a police officer's rough notes do not qualify as a "statement" as that term is defined by

Practice Book § 749;[12] and (2) that the defendant failed to inquire whether the police report had been adopted or approved by the officer. It also maintains that the defendant was obliged to move to strike the officer's testimony and to prove that he was harmed by the trial court's ruling.

We have already decided that the provisions of § 752 requiring the production of a statement of a witness who has testified for the state are mandatory. *State v. Gonzales,* 186 Conn. 426, 432, 441 A.2d 852 (1982). Our rules of practice on this subject are substantially similar to the federal Jencks Act, 18 U.S.C. § 3500; id., 431 n.3; *State v. Shaw,* 185 Conn. 372, 386–87, 441 A.2d 561 (1981); and, in respect to the duty of the state to disclose, similar to Federal Rules of Criminal Procedure, rule 26.2. See 2 Wright, Federal Practice and Procedure: Criminal 2d (1982) §§ 417, 436 through 439. The federal courts have held any "work product" privilege restricting the availability of a statement to be waived for matters covered by the testimony of an investigator once he becomes a witness. *United States v. Nobles,* 422 U.S. 225, 239, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975); see *Goldberg v. United States,* 425 U.S. 94, 101–102, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976). Accordingly, we are disinclined to impose any "work product" limitation upon the broad scope of our rules for discovery in criminal cases.

---

[12] "[Practice Book] Sec. 749. ——DEFINITION OF STATEMENT

"The term 'statement' as used in Sec. 748 means:

"(1) A written statement made by a person and signed or otherwise adopted or approved by him; or

"(2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

We have not previously considered whether a police report[13] or the rough notes of an investigating officer who has testified qualify as a "statement of the witness" subject to production under § 752. The definition of the term "statement" in Practice Book § 749 we deem to be applicable, and it includes "(1) [a] written statement made by a person and signed or otherwise adopted or approved by him." Although the response of the prosecutor to the defendant's request for the police report was ambiguous,[14] we construe it to indicate that the state did have a report of the investigation made by Della Volpe, which he had signed but had not sworn to. Clearly this document would satisfy the definition of "statement" in § 749. Even if it had not been signed, the fact that it was his official report of the incident necessarily meant that it had been "otherwise adopted or approved by him." There is no requirement for an oath. Since production of the report was denied in toto, we are not able to consider whether some portions of the report should be excised pursuant to Practice Book § 753[15] as being unrelated to "the subject matter of the testimony of the witnesses."

[13] In holding that Practice Book § 752 applies only after a witness has testified at a *trial* and is inapplicable to a *pretrial* hearing on a motion to suppress, we assumed that the police report made by a witness was discoverable under the rule. *State* v. *Davis,* 175 Conn. 250, 251–52, 397 A.2d 1347 (1978); *State* v. *Hoffler,* 174 Conn. 452, 460, 389 A.2d 1257 (1978).

[14] "Mr. Durham: Your Honor, the State has no written statement from—that Trooper Della Volpe has filed in this case. I believe there is a police report, but it is not under oath and it is his work product. I don't think defense counsel is entitled to that."

[15] "[Practice Book] Sec. 753. —— ——DELIVERY AND EXCISION OF STATEMENTS

"If the entire contents of a statement requested under Sec. 752 relate to the subject matter of the testimony of the witness, the judicial authority shall order the statement to be delivered directly to the defendant or his counsel for his examination and use. If the prosecuting authority claims that any statement ordered to be produced under Sec. 751 contains matter which does not relate to the subject matter of the testimony of the witness, the judicial authority shall order the prosecuting authority to deliver

With respect to Della Volpe's field notes, which presumably are unsigned, the preliminary question of whether they were "adopted or approved" by him is not sufficiently resolved by the transcript. It is conceivable that such rough notes may contain material which he as the investigating officer never intended to adopt as his own observation or account of an event. Such notes commonly contain not only the personal observations of the officer, but also the results of his interviews with witnesses. Under some circumstances, § 752 authorizes a defendant to obtain for the purpose of cross-examining a witness the officer's record of an interview. The officer's account of the conversation is not subject to disclosure, however, unless it is found to have been adopted or approved by the witness or unless it qualifies under the alternative definition of § 749 (2) as a "stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement." See *Goldberg* v. *United States,* 425 U.S. 94, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976); *Palermo* v. *United States,* 360 U.S. 343, 351–53, 79 S. Ct. 1217, 3 L. Ed. 2d 1287 (1959). The legislative history of the Jencks Act indicates a concern that "only

such statement for the inspection of the judical authority in camera. Upon such delivery, the judicial authority shall not disclose that portion of such statement which does not relate to the subject matter of the testimony of the witness. With such material excised or obliterated, the judicial authority shall then direct delivery of such statement to the defendant or his counsel for his use. If, pursuant to this procedure, any portion of such statement is withheld from the defendant or his counsel and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be sealed and preserved as an exhibit in the case, and, in the event that the defendant appeals, it shall be made available to the appellate court and, unless for good cause the trial court orders otherwise, to counsel for the parties for the purpose of determining the correctness of the ruling of the judicial authority."

those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." *Palermo* v. *United States,* supra, 352. Such a preliminary question may require the trial judge to conduct an inquiry into the circumstances under which the notes were made and to examine them in camera. *Goldberg* v. *United States,* supra, 109; *Campbell* v. *United States,* 365 U.S. 85, 92–93, 81 S. Ct. 421, 5 L. Ed. 2d 428 (1961); *Palermo* v. *United States,* supra, 354.

In this case we are dealing with a request for material, not to be used in cross-examining some witness who talked with Della Volpe, but for the purpose of questioning him, the author. To the extent that his direct testimony included the content of his conversations with other persons, his notes of them would be pertinent to his cross-examination. If his testimony did not relate to those conversations, those notes would be subject to excision pursuant to § 752 as not related to his direct testimony.

Our determination that the trial court should have ordered production of the police report pursuant to § 752 and should also have conducted a hearing to determine whether any of the notes made by Della Volpe were subject to production because he had adopted or approved them as his own observations does not automatically entitle the defendant to a new trial. *State* v. *Gonzales,* supra, 435; see *Goldberg* v. *United States,* supra, 98–99; *Campbell* v. *United States,* supra, 98–99; accord *Palermo* v. *United States,* supra, 354–55. Production under § 752 is often preliminary to in camera inspection pursuant to § 753 for the purpose of excising portions of the documents not related to the subject matter of the testimony of the witness. If it is decided that the defendant was entitled to some portions of the requested items, a further determina-

tion must be made of whether the nondisclosure was harmful. Since the defendant has no constitutional right to the statements of a prosecution witness, the defendant has the burden of establishing the probability of such harm. See *State* v. *Gonzales,* supra, 436 n.8; *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980).

We conclude that the case must be remanded to the judge who presided at the trial so that he can now conduct the further proceedings which this opinion has outlined and which are more particularly detailed in *State* v. *Gonzales,* supra, 435–36.

The case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.