STATE OF CONNECTICUT *v.* MICHAEL HYDOCK
(AC 16668)

Lavery, Schaller and Cretella, Js.

Argued October 26, 1998—officially released February 16, 1999

*Paul R. Kraus*, special public defender, for the appellant (defendant).

*Judith Rossi*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio Vitale*, senior assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, Michael Hydock, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] attempt to commit sexual assault in the third degree in violation of General Statutes §§ 53a-49[2] and 53a-72a (a) (1) (A)[3] and three counts of risk of injury to a child in violation of General Statutes § 53-21.[4] On appeal, the defendant claims that the trial court improperly (1) granted the state's motion to videotape a child victim's testimony outside the physical presence of the defendant, (2) permitted the state to ask leading questions of a child victim on direct examination, (3) restricted the defendant's cross-examination of a witness for the state and

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

[4] General Statutes § 53-21 provides: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

(4) admitted testimony concerning a prior consistent statement by the victim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In August, 1994, the victims, J, age five, and C, age seven, were living with their mother and her friend, Y, in an apartment in New Haven. Both their mother and Y used illegal drugs, and their mother had previously been incarcerated for offenses related to her drug problem. The victims' mother had known the defendant since childhood, and in 1991 the defendant had cared for the two children for a period of time while their mother was incarcerated. The two lost contact with each other until the summer of 1994, when the defendant began visiting the victims' mother regularly and using drugs with her and Y.

On an evening in late August, 1994, the victims' mother went to buy drugs, and left Y and the defendant at home with her two children. Sometime thereafter, Y told the defendant that she was also going out to purchase drugs. After she left, the defendant played a game and watched television with the girls.

While they were watching television, the defendant told C to give him a hug, but she refused his request. The defendant then sat on the sofa next to J's feet and pulled her toward him, but she pulled away and continued to watch television. The defendant then licked a finger on his right hand, leaned over J, put his hand under her nightgown, pushed her panties aside and penetrated her vagina with his finger. The defendant then removed his finger from J, unzipped his pants, took J's hand and tried to make her touch his penis, but she closed her hand and pulled it away without touching it. After the incident, the defendant told J that he would kill her if she told her mother what had happened.

When Y returned home, C and the defendant were in the living room and J was playing in the bedroom by herself. The defendant told Y that he had to leave, and made a hasty exit. Later that evening, J told her sister, C, what the defendant had done to her.

The next day, in the presence of C and Y, J told her mother what the defendant had done. Her mother responded by telling J, "You can't tell anybody, I'll go to jail, they will take you away from me." Later the same day, when the defendant came back to the house, Y confronted him by saying that he had "a lot of . . . nerve after doing what [he] did." Before she could say anything more, the defendant gestured toward J, who was standing nearby, and blurted out, "She is lying." Y then began to strike the defendant, asking how he knew what she meant before she had even told him of the accusation. J's mother, who had overheard the exchange, then began to strike the defendant until he left.

A few days later, on August 26, 1994, J and C told a friend of their grandfather about the incident and, in the girls' presence, she told their grandfather. J and C were then taken to their grandmother's house where J complained that her vaginal area hurt. The girl's grandmother took J to Yale-New Haven Hospital that evening. At the hospital, J told Dan Campbell, a hospital social worker, what the defendant had done to her. J also saw Linda Barthauer, a pediatric physician, and told her that the defendant had penetrated her vagina with his finger, and that he had also tried to make her touch his private parts. A subsequent examination by Barthauer revealed scratches and reddening in the vaginal area, which Barthauer testified could be consistent with sexual contact or penetration of the vagina. The two girls have lived with their grandmother since the incident.

On August 30, 1994, J was interviewed by Sergeant Kelly Wardrup of the New Haven police department's

sexual assault unit. During the course of the interview, J made several drawings depicting the ordeal and told Wardrup that the defendant put his finger in her "private" and that she was afraid of him.

In January, 1995, J was evaluated at the child abuse clinic of Yale-New Haven Hospital, where she told Janet Murphy, a pediatric nurse, what the defendant had done to her. Additionally, J talked to Barbara Bernstein, her school social worker, and Susan Dryzgula, her teacher, with regard to what the defendant had done.

At trial, the state introduced the videotaped testimony of J, taken outside the presence of the defendant, in which she explained in detail what the defendant had done to her. The defendant took the stand and testified that in the second week of August, 1994, he went to the children's home and found them alone with a man named Dave. The defendant maintained that was the last time he had been at their apartment.

The jury returned a verdict of guilty on all counts. The trial court sentenced the defendant to a total effective sentence of twenty years imprisonment suspended after sixteen years, and five years probation with special conditions, including sex offender and substance abuse treatment. This appeal followed. Additional facts will be set forth as they become relevant in the context of the defendant's specific claims.

I

The defendant first claims that the trial court improperly granted the state's motion to videotape J's testimony outside of his physical presence pursuant to General Statutes § 54-86g.[5] Specifically, the defendant

[5] General Statutes § 54-86g (a) provides in relevant part: "In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision

argues that the state did not prove by clear and convincing evidence that a compelling need existed to take J's testimony outside his physical presence. We do not agree.

Prior to the trial in this case, the state moved for permission to videotape J's testimony outside the presence of the defendant. An evidentiary hearing was held before the trial court, *Devlin, J.*, on January 16, 1996. At the hearing, the state first presented testimony from the victims' grandmother who testified that J had been living with her since the August, 1994 incident. J told her grandmother that she was afraid of the defendant, that she often thinks about what he did to her and that she did not want to come to court because of her fear of the defendant. The victims' grandmother also testified that, before the August, 1994 incident, J had observed the defendant get very angry, had heard him engage in arguments and had seen him punch and knock down her mother. In her grandmother's opinion, J would not lie if she was called to testify. Given J's apprehension of the defendant, however, her grandmother believed that J would be inhibited and not answer questions about the allegations in his presence.

The state also presented testimony from Bernstein, J's school social worker, who had been seeing J on a regular basis since November, 1994. Bernstein testified

of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the defendant, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony, except that the court may order the defendant excluded from the room or screened from the sight and hearing of the child only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the physical presence of the defendant in order to insure the reliability of such testimony. . . ."

that in October, 1994, J was brought to the student assistance team in her school because she was having some difficulties in the classroom, acting withdrawn and not performing well academically. During the course of their sessions together, J told Bernstein about the sexual abuse by the defendant. J also confided in Bernstein that she was afraid of the defendant and that she was having a recurring nightmare about the defendant's being after her. Bernstein testified that when J spoke about the nightmares and what the defendant had done to her, J's demeanor changed. She became visibly upset and more withdrawn, and she slumped down in her chair and would not make eye contact. J expressed her fear of the defendant on more than one occasion and told Bernstein that she did not want to see him. Bernstein believed that because J was very fearful of the defendant, J would be intimidated by his presence in the courtroom. Furthermore, Bernstein felt that J would be less intimidated and therefore give more accurate testimony if the defendant was not present in the courtroom. In Bernstein's opinion, J would be intimidated or otherwise inhibited by the defendant's presence so that the trustworthiness or completeness of J's testimony would be called into question.

The state introduced the testimony of Murphy, a nurse for the child sexual abuse program at Yale-New Haven Hospital, who last saw J during an evaluation in January, 1995. During the evaluation, J told Murphy about the sexual abuse by the defendant and also expressed fear of the defendant. Murphy's opinion, based on J's age, her fear of the defendant and her having witnessed his violent behavior toward others, was that J would be intimidated and less reliable in a face-to-face encounter with the defendant, and she would not be able to relate fully what had happened.

The state also introduced the testimony of J's first grade teacher, who testified that J would not be comfortable testifying in the defendant's presence. The defendant did not present any evidence at the pretrial hearing, although he did cross-examine the state's witnesses. The trial court granted the state's motion over the objection of the defendant.[6]

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980); see Practice Book [§ 60-5]. *State* v. *Torres*, 197 Conn. 620, 625, 500 A.2d 1299 (1985). . . . In evaluating preliminary determinations of the trial court in a criminal case, [t]he evidence will be construed in a way most favorable to sustaining the [determination]; [the trial court's] conclusions will not be disturbed on appeal unless found to be clearly erroneous. *State* v. *Bonello*, [210 Conn. 51, 66–67, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S.

---

[6] After accurately setting forth the test that it would apply, the trial court ruled as follows: "I recognize that some of these witnesses were testifying from fairly meager personal experience . . . with the victim . . . . However, I believe based on the full record in this case, the state has satisfied its burden. The age of the victim is seven years old. I think the testimony of the grandmother and the school social worker is quite clear that . . . the combination of this event based on the victim's prior knowledge of the defendant, seeing him engaged in verbal arguments and acting out in an angry fashion had a strong impact on this young girl, that this resulted in an impact . . . on her performance in school . . . nightmares that were related . . . all these, I think, are serious matters which [support] the opinions of the social worker and the grandmother . . . I credit their opinions that it either would result in the victim not saying anything, being just so overwhelmed by the situation that she wouldn't testify at all or would testify in a way that was far less accurate, far less complete, far less reliable than would otherwise be the case. I think it's clear that . . . no one's saying that . . . this young girl is going to lie about things, but nevertheless . . . the testimony of her closest relative that she lives with and her school social worker that has seen her on a weekly basis for a substantial period of time, the court does credit that and I believe that the state has met its burden. So, therefore, the motion to videotape the complaining victim's testimony in accordance with the motion set forth by the state is granted."

Ct. 2103, 104 L. Ed. 2d 664 (1989)] (applying clearly erroneous test to trial court's conclusions on remand in *Jarzbek* hearing)." (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 374–75, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

"[I]n criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. . . . [A] trial court must balance [on a case-by-case analysis] the individual defendant's right of confrontation against the interest of the state in obtaining *reliable* testimony from the particular minor victim in question. . . . [The] trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. . . . [T]he state bears the burden of proving such compelling need by clear and convincing evidence." (Citation omitted; emphasis added.) *State* v. *Jarzbek*, 204 Conn. 683, 704–705, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). "The phrase clear, substantial and convincing evidence fairly characterizes that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [T]he burden of persuasion is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts

asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *State* v. *Bonello,* supra, 210 Conn. 66.

The defendant asserts that none of the witnesses presented by the state testified clearly and convincingly that the reliability of J's testimony would be adversely affected by the defendant's presence. The defendant argues that the state may have proven by clear and convincing evidence that J would experience some discomfort testifying in front of the defendant, but it did not prove by clear and convincing evidence that her testimony would be less reliable.

To support his contention, the defendant points to the fact that none of the witnesses testified that J would lie if called to testify in the defendant's presence. *Jarzbek* states, however, that "the primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony . . . ." *State* v. *Jarzbek,* supra, 204 Conn. 705. It is not a prerequisite, therefore, that the state demonstrate that a minor victim will lie if he or she is required to testify in the presence of the accused. Rather, the state may be able to demonstrate a compelling need by showing that "a minor victim may refuse to testify or may distort his or her testimony because he or she has been threatened by the defendant or is overwhelmed by feelings of guilt." Id., 703.

The defendant also focuses on the trial court's observation that some of the witnesses had "fairly meager personal experience" with J. The trial court, however, expressly credited the testimony of J's grandmother, with whom J had been living since August, 1994, and Bernstein, J's school social worker, who had been seeing J on a regular basis since November, 1994. J's grandmother testified that given J's apprehension and

fear of the defendant, she would be inhibited and refuse to answer questions about the incident in the defendant's presence. "The . . . [guardian] of a sexually abused child . . . [occupies] a unique position to assess the mental and emotional impact of a courtroom confrontation on the minor." *State* v. *Spigarolo*, supra, 210 Conn. 372. The testimony of such an individual may provide critical insight on a minor's ability or inclination to testify reliably in the physical presence of an alleged perpetrator. Id. The trial court, therefore, properly relied on the grandmother's testimony in determining that the state had met its burden.

On the basis of her ongoing therapeutic relationship with J, Bernstein testified that J was very fearful of the defendant and would be intimidated by the defendant's presence in the courtroom. In assessing the reliability of J's testimony, Bernstein believed that J would be so intimidated or otherwise inhibited by the defendant's presence that the trustworthiness or completeness of her testimony would be called into question.

"In reviewing whether the trial court's factual findings were clearly erroneous, [w]e are not limited . . . to reviewing only the evidence before the trial court at the time of the ruling. Because the defendant's fundamental constitutional right to confront the witnesses against him is implicated, we may consider all the evidence in the record." (Internal quotation marks omitted.) *State* v. *Alterisi*, 47 Conn. App. 199, 205, 702 A.2d 651 (1997), citing *State* v. *Darby*, 19 Conn. App. 445, 453-54, 563 A.2d 710, cert. denied, 213 Conn 801, 567 A.2d 833 (1989). We also note, therefore, J's subsequent testimony on videotape that after the assault the defendant had threatened to kill her if she told her mother.

Our review of the entire record fully supports the trial court's finding that a compelling need existed to videotape the testimony of J outside the presence of

the defendant to assure the reliability of her testimony. We conclude, therefore, that the trial court properly permitted the state to videotape the testimony of the child victim outside the presence of the defendant.

## II

In his second claim, the defendant argues that the trial court improperly permitted the state to ask leading questions of J on direct examination.

At the time of trial, J was six years old. J was hesitant to testify and had difficulty testifying regarding what the defendant had done to her. " 'It is axiomatic that trial courts have broad discretion to allow leading questions on direct examination depending upon the circumstances of the individual case. *Wright* v. *Blakeslee,* 102 Conn. 162, 168, 128 A. 113 (1925).' *Fonsworth* v. *Sudol,* 19 Conn. App. 368, 370, 562 A.2d 578 [cert. denied, 212 Conn. 819, 565 A.2d 539] (1989); see also C. Tait & J. LaPlante, Connecticut Evidence § 7.12.2 (d)." *State* v. *Parsons,* 28 Conn. App. 91, 104, 612 A.2d 73, cert. denied, 223 Conn. 920, 614 A.2d 829 (1992). After a careful review of the record, we conclude that the trial court did not abuse its discretion in permitting the state to ask leading questions of J, who evinced fear and hesitancy to testify. See id. (trial court did not abuse discretion in permitting state to ask leading questions of minor witnesses, who were victims of crimes charged and who evinced fear and hesitancy to testify).

## III

The defendant next claims that the trial court improperly restricted his cross-examination of a state's witness in violation of his federal and state constitutional right to confront witnesses.[7] Specifically, the defendant

---

[7] The defendant claims a violation of article first, § 8, of the constitution of Connecticut with respect to the right to confront witnesses. Because the defendant failed to provide an independent analysis of the applicable state constitutional protections, we limit our analysis to the relevant federal con-

argues that the trial court prevented him from eliciting evidence from Y about the possibility that J may have been exposed to adult sexual behavior.

The following additional facts are relevant to our resolution of this issue. After J testified, Y, the mother's friend who had been living with her and the children in the summer of 1994, was called as a witness by the state. On cross-examination, defense counsel asked Y if a number of men would come to the apartment to use drugs, and she answered, "Yes." Defense counsel then asked, "At the time that we're discussing, back in August, 1994, did you prostitute yourself in order to support your heroin habit?" The state objected to this line of questioning, the jury was excused, and the trial court heard the arguments on the objection. Outside the presence of the jury, the trial court allowed the defendant to ask Y whether any sexual acts had taken place in the presence of the children. While still outside the presence of the jury, defense counsel asked Y whether she and J's mother had performed acts of prostitution while the children were in the apartment, to which the witness answered in the affirmative. The state again objected, arguing that, since "married people with children also have sex in a house where there [are] children," the relevant issue was whether any sex acts were committed in the presence of the children, not merely in the apartment. The trial court permitted the defendant to ask Y whether "she [knew] if the children saw her doing any of these [sexual acts]." Defense counsel subsequently asked Y whether "any of these acts, to [her] knowledge, [were] ever witnessed by the children," to which the witness responded, "No." The trial court then sustained the state's objection to that line of questioning, ruling that there was an inadequate foundation and the testimony had no relevance at that time.

stitutional claim. *State* v. *Oliver*, 41 Conn. App. 139, 144 n.6, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996).

No further evidence was presented by the defendant to establish a proper foundation for this line of questioning.

"Our analysis of the defendant's claim is guided by the familiar constitutional guidelines relevant to cross-examination by the defendant in a criminal trial. It is axiomatic that the defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . .

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . .

"The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant. . . . Relevance may be established in one of three ways.

"First, the proffering party can make an offer of proof. . . . Second, the record can itself be adequate to establish the relevance of the proffered testimony. . . . Third, the proffering party can establish a proper foundation for the testimony by stating a good faith belief that there is an adequate factual basis for his or her inquiry." (Citations omitted; internal quotation marks omitted.) *State* v. *Beliveau*, 237 Conn. 576, 584–86, 678

A.2d 924 (1996). The defendant has failed to persuade us that he had established the relevance of the proposed line of questioning in the trial court by any of those methods.

The defendant's argument in support of the relevance of his proposed line of questioning consisted of unsubstantiated speculation that the children may have been exposed to adult sexual behavior.[8] The defendant made no offer of proof to support his theory that J had been exposed to adult sexual behavior, nor does the record provide an independent basis on which the trial court should have concluded that the proposed line of questioning was relevant. Furthermore, the defendant did not assert that he had a good faith belief that his inquiry had an adequate factual basis. To the contrary, it is clear from the record that the defendant had no reason to believe that the victim had witnessed adult sexual behavior.[9] Because there was no such offer of proof, we conclude that the trial court did not abuse its discretion by denying the defendant the opportunity to elicit

[8] The defendant provided the following argument in support of his claim of relevance: "Your Honor, the purpose of the question is to elicit whether or not, in fact, either [Y] or the mother . . . were, in fact, performing acts of prostitution in the household on a regular basis that the children may well have been exposed to. The obvious reason, therefore, being whether or not [the children] could have been infected by anything [the children] may have witnessed or heard in that regard and possibly the subject matter of the victim's allegations may have come to her mind or whether or not she would have been exposed to behavior that would have impaired her morals prior to or during the time that these allegations against [the defendant] arose . . . ."

[9] In her videotaped testimony, J testified, in response to defense counsel's questions, that (1) she did not know whether the men who visited did anything besides take drugs with her mother, (2) some of the men stayed overnight, but when they did so, they slept on the couch and left early in the morning, (3) J and her sister slept in the bedroom with their mother every night and that no one else slept in the bedroom with them, and (4) her mother's boyfriend did not stay overnight. In addition, J testified that she had never observed any other persons doing what the defendant had done to her.

evidence from Y about the possibility that J may have been exposed to adult sexual behavior.

## IV

The defendant's final claim is that the trial court improperly admitted testimony concerning a prior consistent statement by the victim. Specifically, the defendant argues that the trial court improperly admitted, as a prior consistent statement of the victim, Y's testimony that the victim had told her mother about what the defendant had done to her. We do not agree.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . This deferential standard is applicable to evidentiary questions involving hearsay, generally . . . and to questions relating to prior consistent statements, specifically." (Citations omitted; internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 801–802, 709 A.2d 522 (1998).

"As a general rule, a witness' prior consistent statements are inadmissible at trial. *State* v. *Pollitt*, 205 Conn. 61, 76, 530 A.2d 155 (1987); *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 728, 463 A.2d 533 (1983); *State* v. *Brown*, 187 Conn. 602, 607, 447 A.2d 734 (1982); *State* v. *McCarthy*, 179 Conn. 1, 18, 425 A.2d 924 (1979); *Thomas* v. *Ganezer*, 137 Conn. 415, 417, 78 A.2d 539

(1951); see annot., 59 A.L.R.4th 1017 (1988). Such statements clearly are barred by the hearsay rule if sought to be used to prove the truth of the matters asserted therein . . . also, they generally are prohibited even when offered for the limited purpose of rehabilitating the witness' damaged credibility. . . . The rationale upon which this rule is based is that the witness' story is not made more probable or more trustworthy by any number of repetitions of it. . . . *State* v. *Dolphin*, 178 Conn. 564, 568–69, 424 A.2d 266 (1979).

"This rule, however, is not absolute. The trial court, within its discretion, may admit a prior consistent statement if offered to rehabilitate a witness who has been impeached by a prior inconsistent statement; see, e.g., *State* v. *McCarthy*, supra, 179 Conn. 18–21; by the suggestion of bias, motive, or interest arising after the time the prior consistent statement was made; see, e.g., *State* v. *Dolphin*, supra, 178 Conn. 571–72; by a claim of recent fabrication; see, e.g., *State* v. *Pollitt*, supra, 205 Conn. 77; or by a claim of faulty memory. See, e.g., *State* v. *Anonymous (83-FG)*, supra, 190 Conn. 729; see generally *State* v. *Brown*, supra, 187 Conn. 608 (summary of rule and exceptions). When a prior consistent statement is admitted under any of these exceptions, it is admitted to affect credibility only and not to establish the truth of the statement. *State* v. *McCarthy*, supra, 18." *State* v. *Valentine*, 240 Conn. 395, 412–13, 692 A.2d 727 (1997).

The defendant's evidentiary challenge stems from the direct examination of Y. During the course of Y's testimony, the state made an offer of proof to obtain the trial court's ruling on the next series of questions it wanted to ask Y. Outside the presence of the jury, the state elicited testimony from Y that, in her presence, J had told her mother about what the defendant had done, and that J's mother had admonished J not to tell anyone or else J's mother would go to jail. The trial court subsequently ruled that because "one of the lines of cross-

examination was to suggest that J was testifying not from her memory but from a suggestion of other members of her family," the testimony was admissible as a prior consistent statement pursuant to *State* v. *Anonymous (83-FG)*, supra, 190 Conn. 728.[10] When the jurors returned, the trial court instructed them that they could use Y's testimony about the victim's prior statements only to assess the victim's credibility and not as substantive evidence that the crimes had occurred. In addition, the court reiterated the limiting instruction in its final charge.

In *State* v. *Anonymous (83-FG)*, supra, 190 Conn. 715, our Supreme Court held that a court has the discretion to admit a prior consistent statement if offered to rehabilitate a witness who has been impeached by a claim of faulty memory. In creating this additional exception to the general prohibition against the use of prior consistent statements, the Supreme Court explained that "[i]f the witness's accuracy of memory is challenged, it seems clear common sense that a consistent statement made shortly after the event and before he had time to forget, should be received in support." *State* v. *Anonymous (83-FG)*, supra, 190 Conn. 729. The defendant here contends that he "did not cross-examine the victim so much about the accuracy of her memory but [rather questioned the victim] as to her susceptibility to undue influence because of her

---

[10] The state argued three grounds for the admissibility of Y's testimony: (1) as constancy of accusation testimony pursuant to *State* v. *Troupe*, 237 Conn. 284, 290–91, 677 A.2d 917 (1996); (2) as a prior consistent statement of the victim after the defendant had suggested that the victim made a prior inconsistent statement; (3) as a prior consistent statement pursuant to *State* v. *Anonymous (83-FG)*, supra, 190 Conn. 728, because the defendant had challenged the accuracy of the victim's memory. The trial court rejected the state's constancy of accusation argument because J had not named Y as one of the persons to whom she had reported the sexual assault. Additionally, the trial court also rejected the state's prior inconsistent statement argument because it found that the defendant had not impeached J with any prior inconsistent statement.

age." The defendant argues that we should draw a clear distinction between an attack on the suggestibility of a child witness and an attack on her recollection.[11] The defendant, however, offers no authority to support his contention that challenging a person's suggestibility is somehow different from challenging a person's recollection of events. We decline to draw such an artificial distinction.

Challenging the suggestibility of a witness is but one method counsel may use to demonstrate that a witness' memory is faulty, thereby casting doubt on such witness' credibility. The net effect of the defendant's questioning was to call into question the accuracy of the victim's memory of what the defendant had done to her. Under this circumstance, where a witness' accuracy of memory is challenged as faulty, "the court should have the benefit of prior statements [she] has made concerning the same subject matter before time and *other factors* [may have affected her] recollection." (Emphasis added.) *State* v. *Anonymous (83-FG),* supra, 190 Conn. 729.

---

[11] The defendant also claims that *State* v. *Troupe,* 237 Conn. 284, 677 A.2d 917 (1986), establishes the only test pursuant to which a prior consistent statement of a sexual assault victim may come into evidence after the victim's memory has been challenged. In essence, his claim is that *Troupe* supplants all other rules of evidence for the admissibility of a victim's prior statements in sexual assault cases. Specifically, the defendant argues that, because the victim's prior consistent statement was not admissible as constancy of accusation evidence under *Troupe,* the trial court should not have considered any other grounds for admissibility.

In *Troupe,* our Supreme Court restricted the constancy of accusation doctrine so that a constancy of accusation witness may testify only as to facts and timing, and not as to details, of the victim's complaint. In restricting the doctrine, the court explained, however, that "the rule [adopted] today does not affect those cases in which the details of a sexual assault complaint are otherwise admissible, as, for example, in the case of a spontaneous utterance or in the case of a prior consistent statement admitted to rebut a claim of recent fabrication." Id., 304 n.19. Therefore, even though the victim's prior consistent statement was not admissible as constancy of accusation evidence under *Troupe,* the trial court properly considered the admissibility of the prior consistent statement on other grounds.

In the present case, the prior consistent statement was made a short time after the assault before family members may have exerted undue influence on the victim. Furthermore, the prior consistent statement directly countered the defendant's attempt at impeachment, and the trial court admitted the victim's prior consistent statement for the limited purpose of assessing the victim's credibility and not to establish the truth of the statement. Under these circumstances, we conclude that the trial court did not abuse its discretion when it admitted, as a prior consistent statement of the victim, Y's testimony that the victim had told her mother about what the defendant had done to her.

The judgment is affirmed.

In this opinion the other judges concurred.