STATE OF CONNECTICUT *v.* ALLEN ALTERISI
(AC 16160)

Landau, Schaller and Spear, Js.

Argued September 18—officially released November 25, 1997

*Robert M. Casale*, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David Strollo,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of five counts of sexual assault in the first degree in violation of General Statutes § 53a-70 and six counts of risk of injury to a child in violation of General Statutes § 53-21. On appeal, the defendant claims that the trial court improperly granted the state's motion to videotape the minor victims' testimony outside the defendant's physical presence pursuant to General Statutes § 54-86g.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1990, the defendant was living in Meriden with his girlfriend, A, and her two sons, B, age five, and D, age three. During the two years that the defendant lived with A, he often took care of the children while she worked as a waitress in the evenings. In January, 1992,

---

[1] "[General Statutes] Sec. 54-86g. Testimony of victim of child abuse. Court may order testimony taken outside courtroom. Procedure. (a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the defendant, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony, except that the court may order the defendant excluded from the room or screened from the sight and hearing of the child only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the physical presence of the defendant in order to insure the reliability of such testimony. . . ."

A lost custody of the boys due to her substance abuse and psychiatric problems. The children were sent to live with A's sister and brother-in-law, who became the boys' custodial guardians. B and D remained at the home of their aunt and uncle in Meriden for four years.

When the boys arrived at the home of their aunt and uncle, they exhibited unusual behavior. The aunt and uncle and school officials noticed that the boys were very aggressive, punching and hitting each other and other adult males in the groin. This behavior and other incidents prompted the aunt and uncle to take the boys to a child therapist at the Child Guidance Clinic in Meriden (clinic).

In February, 1992, the boys began attending weekly counseling sessions with Steven Thermes, a social worker at the clinic. In individual counseling sessions, both children expressed a strong fear of the defendant. They stated that he hit them, locked them out of the house in the cold weather, and forced them to urinate and defecate outdoors. In February, 1993, the boys first disclosed to Thermes that they had been sexually assaulted by the defendant. Both boys revealed that, among other actions, the defendant had touched their genitals with his hand. The children appeared relieved to have disclosed this information to Thermes. The following week, Thermes reported the allegations to the Meriden police.

On February 26, 1993, the children were separately interviewed by Detective Gary Brandl of the sex crimes unit of the Meriden police department. B and D both asserted that the defendant had undressed them and touched their genitals on numerous occasions when their mother was at work. Each provided graphic detail about the incidents. The boys stated that some of the activity took place in the presence of both brothers. During their interviews, Brandl showed each boy a

series of anatomically correct drawings depicting figures of an adult male and a young boy. With the aid of these drawings, each child described the defendant's conduct. They also stated that the defendant had threatened to hurt them and their mother if they told anyone about these regular occurrences.

At trial, the state introduced, over the defendant's objection, videotaped testimony of B and D that was taken outside the physical presence of the defendant. Both boys testified that the defendant had touched them on their penises and rectal areas, and that they had been forced to do the same to the defendant. The state also presented constancy of accusation evidence from Thermes and Brandl, as well as testimony from the boys' mother and aunt. Following his conviction, the defendant appealed.

The defendant claims that the trial court improperly granted the state's motion to videotape the testimony of B and D outside his physical presence, thereby violating his right of confrontation and right to due process of law under the fifth, sixth and fourteenth amendments to the United States constitution, under article first, § 8, of the Connecticut constitution, and under § 54-86g.

Prior to trial, the state moved for permission to videotape the testimony of B and D outside the presence of the defendant pursuant to § 54-86g (a). An evidentiary hearing was held before the trial court, *Licari, J.*, to determine if there was a compelling need for the state's request. At the hearing, the state first presented testimony from the boys' uncle who testified that D, the younger boy, was "very upset" about coming to court and having to speak in front of the defendant. When the uncle tried to discuss the matter with D, the child told him that "he had been threatened and he was fearful . . . of violent harm . . . ." Because D was "deathly afraid" of the defendant, the uncle believed that D could

not testify candidly about the allegations in the defendant's presence. The uncle stated that B had exhibited a similar fear of testifying before the defendant and had become so worried over the prospect that it affected his schoolwork. As with D, the uncle believed that B could not testify candidly in the presence of the defendant.

The state also introduced the testimony of Sally Tomczak, a social worker and director of the clinic in Meriden. The state had asked Tomczak to evaluate the boys' capacity to testify before the defendant. She testified that D was so frightened of the defendant that it would be "impossible" for him to testify in the defendant's presence. "I think if [D is] going to be able to talk at all it's going to be outside the presence of [the defendant] . . . ." Tomczak also believed that B was too upset to testify in the presence of the defendant and that "he might be able to say a few things but I don't think he would be able to give any details or any accurate testimony about what happened to him, he's too afraid." On the basis of the testimony of the uncle and Tomczak, the trial court granted the state's motion over the objection of the defendant.

"[I]n criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. . . . [A] trial court must balance [in a case-by-case analysis] the individual defendant's right of confrontation against the interest of the state in obtaining *reliable* testimony from the particular minor victim in question. . . . [The] trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling

need, the state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. . . . [T]he state bears the burden of proving such compelling need by clear and convincing evidence." (Citation omitted; emphasis added.) *State* v. *Jarzbek*, 204 Conn. 683, 704–705, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

The defendant asserts that the evidence presented at the hearing was insufficient to support the trial court's conclusion that the *Jarzbek* standards were satisfied with regard to the videotaped testimony of each victim. In essence, however, the defendant is challenging the credibility of the state's witnesses when he claims that Tomczak's opinions were "not creditable" and were "clearly shaped by her own bias," or that the uncle's testimony "increased the risk of unfairness in the hearing process . . . ." Our Supreme Court has stated that "[i]t is in the sole province of the trier of fact to evaluate expert testimony, to assess its credibility, and to assign it a proper weight." Id., 706. Thus, the defendant's claims regarding the credibility of the state's witnesses are not germane on appeal.

The function of this court on appeal is limited to determining whether the decision of the trial court is clearly erroneous. Practice Book § 4061; *State* v. *Spigarolo*, 210 Conn. 359, 374–75, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). In this case, the trial court expressly articulated the findings mandated by *Jarzbek* at the close of the evidentiary hearing: "[T]he state has met its burden of proof, that is, by clear and convincing evidence, that the compelling need exists to exclude the defendant during the testimony of the minor victims in order to preserve the accuracy and reliability of each of the

alleged minors. The state has shown through its evidence that each minor victim would be so intimidated by the physical presence of the defendant that the trustworthiness of each witness' testimony would be seriously called into question. In reaching its conclusion, the court has focused on the reliability issue and not on the issue of the well-being of each victim."

In reviewing whether the trial court's factual findings were clearly erroneous, "[w]e are not limited . . . to reviewing only the evidence before the trial court at the time of the ruling. Because the defendant's fundamental constitutional right to confront the witnesses against him is implicated, we may consider all the evidence in the record." *State* v. *Darby*, 19 Conn. App. 445, 453–54, 563 A.2d 710, cert. denied, 213 Conn. 801, 567 A.2d 833 (1989). Our review of the entire record fully supports the trial court's finding that a compelling need existed to videotape the testimony of B and D outside the presence of the defendant to assure the reliability of their testimony. We conclude, therefore, that the trial court properly permitted the state to videotape the testimony of the minor children outside the presence of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.