STATE OF CONNECTICUT *v.* HOWARD
GOMBERT, JR.
(AC 23012)

Schaller, Bishop and Hennessy, Js.

Argued September 10—officially released December 9, 2003

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Walter D. Flanagan*, state's attorney, and, on the brief, *Warren Murray*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Howard Gombert, Jr., appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2)[1] and 53a-70 (a) (2),[2] risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2)[3] and threatening in violation of General Statutes (Rev. to 1999) § 53a-62 (a) (1).[4] On appeal, the defendant claims that (1) the trial court improperly allowed the

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a . . . class C felony."

[4] General Statutes (Rev. to 1999) § 53a-62 (a) provides in relevant part: "A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

victim[5] to testify outside the presence of the defendant, (2) the court improperly allowed the state to present evidence that the defendant was incarcerated when the police interviewed him, (3) the court improperly restricted his cross-examination of J,[6] who was his girlfriend, (4) the state failed to produce sufficient evidence to support a conviction of attempt to commit sexual assault in the first degree, and (5) this court should review the sealed records of the victim to determine whether the trial court failed to order disclosure of exculpatory information. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1999 the defendant was living with and dating J. J, who had known the victim's family for years, introduced the defendant to the victim and the victim's family. The victim was approximately eight years old; the defendant was in his mid-thirties.

In July, 1999, the victim slept at J's house. During the next day, the defendant and the victim left J's house to go swimming at Squantz Pond.[7] Before going to the pond, the defendant stopped and purchased a two piece bathing suit for the victim. The defendant stopped at his father's house and had the victim put the bathing suit on. They then went to the pond.

At the pond, the defendant took the victim swimming. After swimming for a while, the defendant took the victim into a wooded area some distance from where people were swimming. The defendant pulled the bot-

---

[5] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[6] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify J, a victim of sexual assault, or others through whom the identity of the victim in this case may be ascertained. See General Statutes § 54-86e.

[7] Squantz Pond is part of the Squantz Pond State Park in New Fairfield.

tom part of the victim's bathing suit down and pressed his penis into her buttocks. The defendant's penis did not penetrate the victim's anus; rather, it was pressed between the cheeks of the victim's buttocks. The victim was scared and began to scream, but stopped when the defendant threatened her. The assault lasted between one and ten minutes. After the assault, the victim put her bathing suit on, and the defendant took photographs of her with his camera. The defendant and the victim then returned to J's house. The victim remained silent about the assault because she was afraid of the defendant. The defendant continued to visit the victim's house and gave the victim several presents, including high heels, undergarments and miniskirts. The victim revealed the assault to a friend approximately one year later.[8] The friend immediately told the victim's mother about the assault. The police were contacted, and the defendant was arrested. Additional facts will be set forth as necessary.

## I

The defendant's first claim is that the court improperly allowed the victim to testify on videotape outside the presence of the defendant. The defendant argues that the court abused its discretion by allowing the victim to testify outside his presence because the state failed to show, by clear and convincing evidence, that the victim's testimony would have been less reliable if she were required to testify in his presence. He further argues that this mistake deprived him of his constitutional right to confrontation. We disagree.

Additional facts are necessary for the resolution of the defendant's claim. Prior to trial, the state moved, pursuant to General Statutes § 54-86g,[9] to have the testi-

[8] When the victim revealed the assault to her friend, the victim was aware that the defendant was incarcerated for a variety of crimes committed against J.

[9] General Statutes § 54-86g provides: "(a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years

mony of the victim taken outside the presence of the defendant. The court held a hearing to determine whether the victim had the ability to testify reliably in the presence of the defendant.[10] At the hearing, the victim's mother testified that she had been first told

of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the defendant, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony, except that the court may order the defendant excluded from the room or screened from the sight and hearing of the child only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the physical presence of the defendant in order to insure the reliability of such testimony. If the defendant is excluded from the room or screened from the sight and hearing of the child, the court shall ensure that the defendant is able to observe and hear the testimony of the child, but that the child cannot see or hear the defendant. The defendant shall be able to consult privately with his attorney at all times during the taking of the testimony. The attorneys and the judge may question the child. If the court orders the testimony of a child to be taken under this subsection, the child shall not be required to testify in court at the proceeding for which the testimony was taken.

"(b) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the following procedures be used when the testimony of the child is taken: (1) Persons shall be prohibited from entering and leaving the courtroom during the child's testimony; (2) an adult who is known to the child and with whom the child feels comfortable shall be permitted to sit in close proximity to the child during the child's testimony, provided such person shall not obscure the child from the view of the defendant or the trier of fact; (3) the use of anatomically correct dolls by the child shall be permitted; and (4) the attorneys for the defendant and for the state shall question the child while seated at a table positioned in front of the child, shall remain seated while posing objections and shall ask questions and pose objections in a manner which is not intimidating to the child."

[10] That type of hearing generally is referred to as a *Jarzbek* hearing in light of *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

about the sexual assault by the victim's friend. When the mother questioned the victim, the victim told her that the defendant had threatened her, stating, "[d]on't scream, or I'm going to kill you." The mother also testified that the victim feared the defendant, even though she had told the victim, "[h]e can't hurt you. He can't hurt you. Mommy's not going to let that happen." The mother attributed that fear to the threat and the victim's knowledge that the defendant had assaulted J.[11] Most importantly, the following colloquy took place between the mother and the prosecutor:

"[The Prosecutor]: Would your—would your daughter testify—if your daughter were called into this court to testify, would [the defendant's] presence affect her testimony?

"[The Witness]: She won't walk in this courtroom.

"[The Prosecutor]: She what?

"[The Witness]: She wouldn't walk in this courtroom with him here.

"[The Prosecutor]: Why?

"[The Witness]: She's scared to death of him.

"[The Prosecutor]: Have you ever specifically asked her that question, whether she would testify in front of him? And her response is?

"[The Witness]: No.

"[The Prosecutor]: How recently have you discussed this topic of whether she will testify or whether she's still afraid of [the defendant] with your daughter?

"[The Witness]: Two days ago."

The court also heard testimony from Marion Gaetano, the coordinator of the rape crisis unit of the Center

---

[11] No evidence of those crimes was introduced at trial.

for Women and Families in Bridgeport. Gaetano is a counselor at the center and a member of its multi-interdisciplinary investigative team, the purpose of which is to help reduce the trauma of children who disclose a sexual assault. Gaetano explained that the victim and J were very close, and that the victim viewed J as an aunt. Gaetano further testified that the victim would "just shut down" and would not testify if the defendant were present. Further, Gaetano stated that because of the victim's sense of shame, humiliation and embarrassment stemming from the sexual assault, the victim would not be able to testify in a free and uninhibited fashion.

The court also heard testimony from James Fletcher, a senior assistant state's attorney. Fletcher testified that the defendant had been convicted of several crimes of violence against J, including sexual assault in the third degree, assault in the second degree, assault in the third degree, unlawful restraint and criminal violation of a protective order.

The court ruled that the victim would be permitted to testify outside of the presence of the defendant. The court credited the testimony of the victim's mother and Gaetano, and stated that "the child victim in this case is intimidated and fearful of the defendant to the point where she would not be able to give reliable testimony if she were required to testify in the defendant's physical presence." The court went on to state that its "primary focus [was] on the reliability of the minor victim's testimony, not on the injury that the minor victim may suffer by testifying in the presence of the accused."

Our standard of review is well established. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous." (Internal quotation marks omitted.) *State* v. *Hydock*, 51 Conn. App. 753, 761, 725 A.2d 379, cert.

denied, 248 Conn. 921, 733 A.2d 846 (1999). "This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Bonello*, 210 Conn. 51, 66–67, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 2103, 104 L. Ed. 2d 664 (1989). "In evaluating preliminary determinations of the trial court in a criminal case, [t]he evidence will be construed in a way most favorable to sustaining the [determination] . . . ." (Internal quotation marks omitted.) *State* v. *Hydock*, supra, 761.

"[I]n criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. . . . [A] trial court must balance [in a case-by-case analysis] the individual defendant's right of confrontation against the interest of the state in obtaining *reliable* testimony from the particular minor victim in question. . . . [The] trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. . . . [T]he state bears the burden of proving

such compelling need by clear and convincing evidence." (Emphasis in original; internal quotation marks omitted.) *State* v. *Alterisi*, 47 Conn. App. 199, 203–204, 702 A.2d 651 (1997). The defendant's right to confrontation is not violated when the state shows, by clear and convincing evidence, that if the victim testified in the defendant's presence, the victim's testimony would be less reliable or accurate. See *State* v. *Jarzbek*, 204 Conn. 683, 704–705, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

In this case, the court heard testimony that the victim was so afraid of the defendant that she would not be able to testify. Gaetano stated that the victim would "shut down" in the presence of the defendant. The court also was aware that the victim's fear stemmed from more than the death threat; the court heard testimony that the victim was aware that the defendant had violently attacked J, whom the victim viewed as an aunt. Thus, the court reasonably could have concluded that the victim's well founded fear of the defendant caused an inability, rather than unwillingness, to testify. The victim's complete inability to testify destroys any opportunity for reliable or accurate testimony. Viewing the evidence in the light most favorable to sustaining the court's determination, the court's decision that the state had shown by clear and convincing evidence there was a compelling need to videotape the victim's testimony was not clearly erroneous. The defendant's confrontation rights, therefore, were not violated.

The defendant argues that *State* v. *Bronson*, 258 Conn. 42, 779 A.2d 95 (2001), controls. In *Bronson*, our Supreme Court noted that in a *Jarzbek* hearing, it was inappropriate to focus on the victim's emotional needs rather than on the reliability of the victim's testimony. Id., 54–55. Here, the court correctly concentrated on the victim's reliability and not on her preferences. Although the court was forced to address the emotional

needs of the victim in that her fear of the defendant formed the basis of her inability to testify, the court appropriately focused on whether the victim would be reliable. The victim's inability to testify, and not the victim's fear of the defendant, was the basis for allowing her testimony to be taken outside the presence of the defendant. See *State* v. *Alterisi*, supra, 47 Conn. App. 205 (intimidated by defendant's presence, victims permitted to testify out of defendant's presence to assure reliability of their testimony). *Bronson*, therefore, is inapposite.

## II

The defendant's second claim is that the court improperly allowed the state to present evidence that the defendant was incarcerated when the police interviewed him. The defendant argues that the location of the interview had no probative value, was overly prejudicial and was therefore inadmissible. We are not persuaded.

Additional facts are necessary for the resolution of the defendant's claim. After the police received the complaint of the sexual assault, state police Troopers David Delvecchia and Edwin Olavarria were sent to interview the defendant. The interview took place in the Bridgeport Correctional Center, where the defendant was incarcerated. The defendant waived his right to remain silent and denied any involvement in the sexual assault.

Prior to trial, the defendant filed a motion in limine to preclude certain portions of his interview with the troopers. During argument on the motion, the defendant sought to preclude the troopers from testifying about the location of the interview. The defendant argued that the location of the interview was irrelevant and prejudicial. The state argued that the location of the interview was merely a fact of the case. The court granted the motion in part and denied the motion in

part, but ruled to allow the testimony about the location, stating that it "says nothing about why [the defendant] was there, how long he was there; it's really not misconduct more or less. . . . I don't think it's unduly prejudicial . . . ." At trial, Delvecchia and Olavarria both testified that the interview took place at the Bridgeport Correctional Center. In addition, Delvecchia testified that the defendant was an inmate of the facility.

"We first set forth our standard of review. We have generally held that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 28–29, 830 A.2d 240 (2003).

Connecticut Code of Evidence § 4-1 provides in relevant part that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." As it is used in the code, relevance represents two distinct concepts: Probative value and materiality. Conn. Code Evid. § 4-1, commentary. Conceptually, relevance addresses whether the evidence makes the existence of a fact material to the determination of the proceeding more probable or less probable than it would be without the evidence. *State* v. *Gibson*, 75 Conn. App. 103, 110, 815 A.2d 172, cert. granted on other grounds, 263 Conn. 906, 819 A.2d 840 (2003). "[I]t is not necessary that the evidence, by itself, conclusively establish the fact for which it is offered or render the fact more probable than not." Conn. Code Evid. § 4-1, commentary. In contrast, materiality "turns upon what is at *issue* in the case, which generally will be determined by the pleadings and the applicable sub-

stantive law." (Emphasis added.) Id. If evidence is relevant and material, then it may be admissible. See id., § 4-2.

When determining admissibility, however, relevance and materiality are not the only factors. "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Id., § 4-3.

Evidence as to the location of the interview had little or no relevance or materiality under the circumstances of this case. Evidence of the location, however, was prejudicial because it revealed that the defendant was an inmate at the time of the interview. We need not, however, decide whether the court abused its discretion in admitting the evidence because, even if we assume that the evidence was admitted improperly, the admission was harmless. See *State* v. *Rivera*, 74 Conn. App. 129, 152, 810 A.2d 824 (2002).

Because that was an evidentiary ruling, the defendant bears the burden of proving the harmfulness of the alleged error. See *State* v. *Marshall*, 246 Conn. 799, 812, 717 A.2d 1224 (1998). There are presently two standards for establishing harmfulness. Id. One standard "states that the defendant must establish that it is more probable than not that the erroneous action of the court affected the result. . . . A second [standard] indicates that the defendant must show that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict." (Citations omitted; internal quotation marks omitted.) Id. Our Supreme Court has indicated that there may be no analytical difference between the two standards. See *State* v. *Young*, 258 Conn. 79, 95, 779 A.2d 112 (2001) (applying both standards, noting there may be no differ-

ence between the two). Notwithstanding their potential similarity, we will apply both.

Here, the defendant cannot show that the admission of the challenged evidence was harmful. The evidence was presented in passing, and neither the prosecutor nor defense counsel focused their examinations on that evidence. Further, the evidence was not a central feature of the closing arguments. Although in closing argument, the prosecutor and defense counsel each mentioned that the defendant had been incarcerated at the time of the interview, their references to that fact were in the context of larger discussions about other issues. Additionally, the defendant was presented in court as being at liberty; he was not shackled, and he wore street clothes. Moreover, the court gave an adequate presumption of innocence charge that would have precluded the jury from misusing the information. See *State* v. *Tucker*, 226 Conn. 618, 627–29, 629 A.2d 1067 (1993) (court referring to defendant as "prisoner" did not deprive defendant of fair trial because, among other things, court instructed jury on presumption of innocence and jury presumed to follow law). The defendant has not shown that it was more probable than not that the challenged evidence affected the result of the trial. The defendant has also not shown that the admission of that evidence undermined confidence in the fairness of the verdict. The defendant's claim fails.

### III

The defendant's third claim is that the court improperly restricted his cross-examination of J. The defendant argues that the court's restriction of cross-examination denied him his constitutional rights to confrontation and to present a defense. We disagree.

Additional facts are necessary for the resolution of the defendant's claim. During the defendant's cross-examination of J, the defendant sought to ask her

whether there was inappropriate sexual behavior in the victim's home that could have given the victim the knowledge to be able to fabricate the present allegation of sexual assault.[12] After an objection by the state on the ground of relevance, defense counsel argued: "The relevance, [the victim] has testified, Your Honor, that she couldn't remember whether, when she was allegedly assaulted by [the defendant], that she was forward or backward, yet she clearly has stated in some of her statements that his penis touched her and touched her skin. I'm trying to establish how she would have knowledge of male anatomy, her familiarity with male anatomy, her familiarity with overt sexuality. I'm trying to challenge, in other words, [the victim's] knowledge." The court sustained the objection, ruling that it was "not sure how [J's] knowledge of any inappropriate sexual activity in [the victim's] home, if there was such inappropriate activity, has a bearing on [the victim's] knowledge about the male anatomy. It sounds speculative to me . . . . [T]he question is calling for speculation."

We review the court's decision regarding the admissibility of evidence to determine if the court has abused its discretion. See *State* v. *Reynolds*, 264 Conn. 1, 59, 836 A.2d 224 (2003). "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." Id.

---

[12] The question was cut off by an objection:

"[Defense Counsel]: . . . Has there ever been an instance of sexually inappropriate behavior in [the victim's] home that might lead her—

"[The Prosecutor]: Objection. Relevance."

After argument outside the presence of the jury, defense counsel tried to ask the question in a different form:

"[Defense Counsel]: . . . [A]re you aware of instances of sexually inappropriate behavior in [the victim's] home?

"[The Prosecutor]: Objection. Relevance."

## A

The defendant argues that the court's decision to restrict cross-examination denied him his right to confrontation. "[T]he defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation [for] testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . In order to comport with the constitutional standards embodied in the confrontation clause [of the sixth amendment to the United States constitution], the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Internal quotation marks omitted.) Id., 58–59.

Further, the confrontation clause does not allow the defendant to introduce speculative evidence; "[i]t is entirely proper for a court to deny a request to present certain testimony that will further nothing more than a fishing expedition . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Barnes*, 232 Conn. 740, 749–50, 657 A.2d 611 (1995). "Evidence is too speculative if the record makes it clear that there was no

basis for finding that the testimony would bear on relevant facts." (Internal quotation marks omitted.) *Harrison* v. *Hamzi*, 77 Conn. App. 510, 516, 823 A.2d 446, cert. denied, 266 Conn. 905, 832 A.2d 69 (2003). Thus, because the confrontation clause does not abrogate the rules of evidence, if the decision of the court regarding the evidence was within the court's discretion, the defendant's right to confrontation was not violated.

Here, the evidence the defendant sought to present was speculative. J's potential knowledge of whether there was inappropriate sexual behavior in the victim's home would not assist the jury in determining if the victim was being truthful. Even if we assume that J had indicated that there was some sort of inappropriate sexual behavior, that would not have provided the jury with any evidence that the victim was aware of that behavior or that she was influenced by that behavior to fabricate a story. Defense counsel stated that she was attempting to challenge the victim's knowledge. Any answer elicited from her questions, however, would have required J to speculate as to whether the victim was aware of the behavior or would have been irrelevant had the victim not been aware of the behavior. Therefore, the court did not abuse its discretion by precluding that line of inquiry. Thus, the defendant's right to confrontation was not violated.

B

The defendant also argues that the court's restriction of cross-examination denied him his right to present a defense. "The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts

as well as the prosecution's to the jury so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 541–42, 821 A.2d 247 (2003).

"A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . Thus, our law is clear that a defendant may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated." (Citation omitted; internal quotation marks omitted.) Id., 542.

On the basis of our analysis in part III A, the defendant's right to present a defense was not violated because the court did not abuse its discretion when it restricted the cross-examination of J.

IV

The defendant's fourth claim is that the state produced insufficient evidence to establish his conviction of attempt to commit sexual assault in the first degree. The defendant argues that the state failed to prove that he had the specific intent to engage in sexual intercourse with the victim.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established

guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ashe*, 74 Conn. App. 511, 516, 812 A.2d 194, cert. denied, 262 Conn. 949, 817 A.2d 108 (2003).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted.) *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992).

The defendant was charged with attempt to commit sexual assault in the first degree in violation of § 53a-70 (a) (2), which is violated when a person "engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ." General Statutes § 53a-70 (a) (2). Sexual intercourse is defined in relevant part as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. . . . Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body." General Statutes § 53a-65 (2).

An attempt occurs when a person "intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constitut-

ing a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a) (2). As a matter of law, a substantial step toward the completion of a crime occurs if a defendant takes an action "enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission . . . ." General Statutes § 53a-49 (b) (2). Regarding intent, "[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." General Statutes § 53a-3 (11). Hence, to be guilty of the crime of attempt to commit sexual assault in the first degree under the state's theory of the case, the jury must have found that the defendant consciously and intentionally completed substantial steps toward causing penetration of the victim during vaginal intercourse, anal intercourse or fellatio.[13]

The state presented facts from which the jury reasonably could have found the defendant guilty. The jury reasonably could have inferred that the defendant's acts of taking the victim swimming in a secluded area and placing his penis between the cheeks of her buttocks constituted substantial steps toward completing the crime. The jury reasonably could have inferred the requisite intent to commit the crime from the fact that the defendant, by taking the victim swimming at a secluded location, isolated her from other adult caretakers.

The defendant argues that there was insufficient evidence as a matter of law to show his intent to penetrate the victim. The defendant argues that because the assault was uninterrupted and he did not penetrate the victim, his intent could not have been to penetrate her.

---

[13] The jury also would have to find, beyond a reasonable doubt, that the victim was younger than thirteen years of age, although that fact was not in dispute.

"[I]t is well established that the question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide. . . . *State* v. *Smith*, 46 Conn. App. 321, 326, 699 A.2d 262 (1997)." (Internal quotation marks omitted.) *State* v. *Servello*, 59 Conn. App. 362, 369, 757 A.2d 36, cert. denied, 254 Conn. 940, 761 A.2d 764 (2000).

The facts the defendant relies on are equivocal, and the jury reasonably could construe them against him. The jury reasonably could have found that the victim's screaming caused the defendant to panic and to decide to stop the assault. That inference would be supported by the victim's testimony that the assault was brief. Thus, there clearly was sufficient evidence for the jury reasonably to infer that the defendant's goal was to cause penetration, but that he was dissuaded from completing the assault because of the way the situation unfolded.[14] Therefore, viewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was enough evidence for the jury to find, beyond a reasonable doubt, that the defendant was guilty of attempt to commit sexual assault in the first degree.

---

[14] We note that the defendant's decision to stop the assault would not constitute renunciation. Renunciation of a crime must be voluntary; "renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, which increase the probability of detection or apprehension . . . ." General Statutes § 53a-50; see also *State* v. *Servello*, supra, 59 Conn. App. 375–76.

## V

The defendant's final claim is that we should review the sealed records of the victim to determine whether the court failed to disclose exculpatory information. After our review of the records, we conclude that the court did not abuse its discretion in determining that all exculpatory information had been given to the defendant.

Additional facts are necessary for the resolution of the defendant's claim. After the assault, the victim and her mother spoke with individuals associated with the department of children and families, the Bridgeport Center for Women and Families, and the Children's Connection of Fairfield County. Prior to trial, the defendant filed a motion requesting the court to conduct an in camera review of the victim's records from the previously mentioned organizations to determine if there was any exculpatory information contained in the records. The state obtained the necessary waivers, and the court conducted its review. On the basis of that review, the court revealed that there was a prior inconsistent statement and a statement of bias against the defendant.

The standard of review is well established. We review the court's decision not to release confidential records to determine if the court abused its discretion. *State* v. *Olah*, 60 Conn. App. 350, 354, 759 A.2d 548 (2000); see also *State* v. *Gainey*, 76 Conn. App. 155, 158, 818 A.2d 859 (2003). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion . . . means that the ruling appears to have been made on untenable grounds. . . . In determining whether the trial court has abused its discretion, we must make every reason-

able presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *State* v. *Olah*, supra, 354.

We have reviewed the confidential records and find no additional exculpatory information. Accordingly, the court did not abuse its discretion when it determined that all exculpatory information had been given to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.