******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT PERUGINI
(AC 35086)

Keller, Mullins and Bear, Js.

*Argued September 26—officially released November 25, 2014*

(Appeal from the Superior Court, judicial district of Litchfield, Danaher, J.)

*Norman A. Pattis*, with whom, on the brief, was *A. Paul Spinella*, for the appellant (defendant).

*Ryan M. Budd*, certified legal intern, with whom were *Bruce R. Lockwood*, senior assistant state's attorney, and, on the brief, *David S. Shepack*, state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Robert Perugini, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (1). On appeal, the defendant claims that there is insufficient evidence to sustain the jury's verdict. We affirm the judgment of the trial court.

The following facts, which a jury reasonably could have found, and procedural history are relevant to this appeal. On the night of December 8, 2009, the defendant was at the Farmington home of his former fiancée, Dawn Barry, while Robert Ciochetti, the victim, was working at the Red Rooster Saloon, a bar located in Winsted. The defendant and the victim had co-owned and operated the bar since the summer of 2007. At some point in the evening, the defendant told Barry to call the victim at the bar and ask him to leave his key to the bar under the doormat for a bartender to use the following morning. Barry called the victim and asked him to leave the key, but the victim refused to do so, shouted profanities at Barry, and hung up the phone. The defendant overheard the victim's exchange with Barry. She attempted to call him back, but the victim did not answer. Angered by the victim's response to Barry's phone call, the defendant left Barry's home and drove his truck to the bar.

Between twenty and thirty minutes later, the defendant arrived at the bar. There were four individuals inside the bar at the time that the defendant entered. Two patrons, Jeffrey Calkins and Brett Flaherty, sat at the serving bar located to the right of the entrance. A third patron, Alison Welcome, stood near a jukebox located at the back of the bar across from the entrance. The victim was mopping the floor near the restrooms located at the back of the bar in the area of the jukebox. The defendant, using a profanity, yelled that the bar was closed and ordered the patrons to leave. The defendant then threw one beer bottle at a wall near the victim, shattering it, and broke another beer bottle near the serving bar.

Afterward, without provocation, the defendant, who was five feet, ten and one-half inches tall and weighed approximately 250 pounds, approached the victim, who was approximately five feet, seven inches tall and weighed approximately 160 pounds, and choked him against a wall nearby where the victim had been standing.[1] During the ensuing attack, the defendant picked up the victim and slammed him into a heavy wooden table that was attached to a nearby wall, snapping the table away from the braces attaching it to the wall due to the force of the slam. The defendant then left the bar and drove away in his truck. The attack on the victim lasted approximately sixty seconds.

As the defendant was leaving the bar, Calkins, who was standing outside by that time, called 911. After completing the call and observing the defendant drive away, Calkins reentered the bar by himself to check on the victim's condition. The victim appeared to be in a semiconscious state and could not respond intelligibly to any questions Calkins asked.

After receiving a dispatch regarding the attack, Officer Scott Twombly of the Winchester Police Department[2] arrived at the bar simultaneously with two other officers and found the victim lying on the floor with Calkins standing nearby. The victim was unable to answer the simple questions that the officers asked, and had a large, growing hematoma on the back of his head.[3] The officers called an ambulance, which transported the victim to Charlotte Hungerford Hospital in Torrington.

The victim was treated at the hospital by Jarrett Lefberg, an emergency physician. Following medical examinations, Lefberg concluded that the victim had suffered, among other things, a basilar skull fracture. Lefberg then transferred the victim to Hartford Hospital, where he spent four days in the critical care unit.

The defendant was arrested and charged in the substitute long form information with assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On June 6, 2012, a jury found the defendant not guilty of assault in the first degree, but found the defendant guilty of assault in the second degree as a lesser included offense.[4] The defendant was sentenced to five years incarceration, execution suspended after three years, followed by three years of probation with various conditions. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the evidence is insufficient to sustain the jury's verdict. Specifically, the defendant claims that the evidence fails to prove beyond a reasonable doubt that he intended to cause serious physical injury to the victim, as required under § 53a-60 (a) (1).[5] We disagree.

We begin by setting forth the relevant standard of review. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Elsey*, 81 Conn. App. 738, 743–44, 841 A.2d 714, cert. denied, 269 Conn. 901, 852 A.2d

733 (2004).

"[Although] the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense . . . each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007). "[A]lthough it is within the province of the jury to draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture." (Internal quotation marks omitted.) *State* v. *Smith*, 185 Conn. 63, 71, 441 A.2d 84 (1981).

"Finally . . . proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 283 Conn. 330.

To find the defendant guilty of assault in the second degree, the jury had to find, beyond a reasonable doubt, that (1) the defendant intended to cause serious physical injury to the victim, and (2) the defendant actually caused serious physical injury to the victim. General Statutes § 53a-60 (a) (1).[6]

For the purposes of § 53a-60 (a) (1), "serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). The defendant does not contest the jury's implicit finding that the basilar skull fracture suffered by the victim was a serious physical injury, or that the incident between the defendant and the victim caused the victim's injury. The defendant's sole claim is that the evidence was insufficient to prove that he intended to cause serious physical injury to the victim. He maintains that the victim's injury

was accidental.

A person acts with the requisite intent under § 53a-60 (a) (1) when that person's "conscious objective" is to cause serious physical injury.[7] General Statutes § 53a-3 (11). "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . [Consequently,] absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Gombert*, 80 Conn. App. 477, 497, 836 A.2d 437 (2003), cert. denied, 267 Conn. 915, 841 A.2d 220 (2004). Intent may be inferred from the accused's conduct before, during, and after an alleged crime. *State* v. *Wells*, 100 Conn. App. 337, 344, 917 A.2d 1008, cert. denied, 282 Conn. 919, 925 A.2d 1102 (2007). In addition, the jury can infer "that the [accused] intended the natural consequences of his [or her] actions." *State* v. *McRae*, 118 Conn. App. 315, 320, 983 A.2d 286 (2009).

The defendant claims that the evidence was insufficient for the jury to find that he intended to cause serious physical injury to the victim. He primarily relies on his own testimony at trial to create an alternate narrative for the incident at the bar and to argue that the jury's verdict was the result of improper conjecture and speculation. The defendant's version of the incident is as follows. The defendant "wasn't happy" with the victim following the victim's conversation with Barry, and he drove to the bar in order to remove the bar's liquor license from the wall, shut the bar down, and inquire as to why the victim refused to leave the bar's key for the bartender. After yelling an expletive and throwing at least one beer bottle upon his arrival, he approached the victim merely to take his key so that he could shut the bar down. The victim pushed him and grabbed him by his shirt as he approached, leading to a struggle during which they both slipped on the floor that the victim had been mopping. The victim then fell into the table. After noticing that the table had broken off the wall and was lying on top of the victim, the defendant flipped the table off of the victim and checked on his condition. According to the defendant, the victim continued to argue cogently with him for about a minute or two, after which the defendant left the bar to put the liquor license in his truck. The defendant went back inside the bar and remained there for another minute or two, continuing to argue with the victim. He then left the bar and returned to Barry's home under the impression that the victim did not have any significant injuries.

Although the defendant's testimony offers a different account of the incident and its surrounding circumstances, it is not the role of this court to weigh the evidence or examine the credibility of witnesses. *State* v. *Bunkley*, 202 Conn. 629, 644, 522 A.2d 795 (1987).

"[Q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the [jury's] assessment of the credibility of the witnesses that is made on the basis of [the jury's] firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Saez*, 115 Conn. App. 295, 305, 972 A.2d 277, cert. denied, 293 Conn. 909, 978 A.2d 1113 (2009). Our task is to determine whether the jury reasonably could have construed the evidence, in its totality, to find that the defendant intended to inflict serious physical injury on the victim. See, e.g., id., 304–305 (evidence sufficient for larceny conviction despite fact that defendant's testimony conflicted with other testimony supporting verdict).

Here, viewing the evidence in the light most favorable to sustaining the jury's verdict, we conclude that the jury reasonably could have found that the defendant intended to cause serious physical injury to the victim. The defendant and Barry testified that the victim had shouted and cursed at Barry when she called regarding the key to the bar. Barry testified that the defendant "[w]asn't happy" about the victim's exchange with her, and the defendant testified that he was both "angry" and "wasn't happy" about the victim's comments. In addition, the defendant testified that he drove between twenty and thirty minutes before arriving at the bar. Barry testified that it usually took around forty-five minutes to drive from her home in Farmington to the bar in Winsted. The jury reasonably could have used the foregoing evidence to conclude that the defendant was upset about the victim's exchange with Barry and was angrily speeding to the bar to confront the victim.

The evidence further indicated that, upon entering the bar, the defendant yelled an expletive, ordered the patrons at the bar to leave, and threw beer bottles, including one that shattered near the victim. The victim testified that one bottle hit him in the chest. According to the testimony of Calkins, who observed part of the incident, the defendant walked up to the victim, choked him against a wall, picked him up, and slammed him into a heavy wooden table, causing the table to break away from the braces holding it to a wall. The victim testified that he could not remember being slammed into a table, but asserted that the defendant had punched him in the eye, causing his head to hit the wall behind him, and had hit him with a mop handle. Calkins, as well as Welcome, also testified that the defendant left the bar following the incident and immediately drove away in his truck, leaving the victim unattended inside. There was no evidence that the defendant took any steps to summon medical assistance or otherwise provide aid to the victim. The jury reasonably could have inferred from the cumulative impact of the evidence, including the defendant's reaction to the victim's

phone conversation with Barry, the manner in which he drove to the bar, his violent conduct once he entered the bar, and the circumstances of his departure from the bar, that the defendant intended to cause serious physical injury to the victim.

The defendant presents a few additional arguments worth addressing. The defendant argues that it was not physically possible for him to lift the victim and throw him into the table. Therefore, according to the defendant, he could not have intended to perform such a maneuver or caused the victim's serious physical injury in that manner. The defendant testified that his back was partially disabled, making it impossible for him to throw the victim onto the table. The defendant, however, did not offer any medical evidence of his alleged disability. The jury also reasonably could have credited testimony of the defendant and Barry that the defendant regularly exercised and lifted weights, undermining his testimony about his alleged disability. Furthermore, Calkins testified that the defendant lifted and slammed the victim into the table, which the jury reasonably could have credited.

In addition, the defendant testified that a mounted deer head was positioned directly over the table on which the victim landed, making it impossible for the defendant to have picked him up and slammed him into the table. The jury, however, viewed a picture of the mounted deer head hanging over the spot where the table previously was located and heard testimony from Calkins stating that the defendant slammed the victim, at some uncertain angle, into the table. The jury reasonably could have discredited the defendant's testimony in favor of Calkins' testimony, after examining the image of the mounted deer head, and found that the defendant lifted and slammed the victim into the table.

Next, the defendant argues that the evidence did not indicate precisely whether the victim's serious physical injury was caused by the wall, the table, or the floor of the bar. The defendant asserts that the jury must have speculated as to the cause of the injury and therefore could not have reasonably inferred that the defendant intended to cause serious physical injury to the victim. The state did not, however, have to prove that a precise instrument or object directly caused the victim's serious physical injury to meet its burden of proof on the assault in the second degree charge.[8] The state's burden was only to prove that the defendant intended to inflict serious physical injury on the victim, and that he did so; these findings were supported by the evidence. The jury may infer that an accused individual intended the natural consequences of his or her actions. *State* v. *McRae*, supra, 118 Conn. App. 320.

The jury had before it ample evidence to support an inference that the victim sustained a serious physical injury by striking the table, the floor, or the wall. By

crediting Calkins' testimony, the jury reasonably could have inferred that the victim suffered a serious physical injury when he landed on the table, or that he suffered it thereafter when he struck the floor following the defendant's initial attack. By crediting the victim's testimony, the jury reasonably could have inferred that he suffered a serious physical injury when the defendant punched him in the eye, causing his head to hit the wall behind him. According to the defendant's own medical expert, J. Allen Britvan, an emergency physician, an individual will sustain a basilar skull fracture by being struck in the head with an adequate amount of force "in the right spot." Therefore, the jury reasonably could have concluded that the defendant intended to cause the victim's serious physical injury because it was a natural consequence of the defendant's actions, namely, an attack on the victim during which he struck the wall, the table, or the floor.

For the foregoing reasons, we conclude that the cumulative force of the evidence amply supports the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Some patrons of the bar referred to the defendant as "Big Bob" and the victim as "Little Bob."

[2] Twombly explained that "the city of Winstead is located within the town of Winchester."

[3] The victim was asked if he knew the day of the week, the time of day, and where he was located.

[4] According to our Supreme Court in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), "[a] defendant is entitled to an instruction on a lesser offense if . . . the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or the bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser."

[5] General Statutes § 53a-60 provides in relevant part: "(a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person . . . ."

[6] In its charge to the jury, the court explained that the jury could consider whether to find the defendant guilty of assault in the second degree as a lesser included offense if it found the defendant not guilty of assault in the first degree. The court further explained that the jury could find the defendant guilty of assault in the second degree either by finding that the defendant caused serious physical injury to the victim with the intent to cause serious physical injury under § 53a-60 (a) (1), or, alternatively, by finding that the defendant recklessly caused serious physical injury to the victim by means of a dangerous instrument under § 53a-60 (a) (2).

After the jury returned its verdict of not guilty as to the assault in the first degree charge, the court clerk proceeded to ask the jury the following: "Of the lesser included offense of assault in the second degree with intent to cause serious physical injury and the defendant causes serious physical injury, do you find the defendant guilty or not guilty?" In response to that specific charge, the jury foreperson answered, "Guilty." When the court clerk polled the jury to confirm that it found the defendant guilty of that specific charge, the jurors, in unison, replied, "Yes." The court clerk did not reference the alternative method of finding that the defendant committed

assault in the second degree through the reckless use of a dangerous instrument. Neither the prosecution nor the defense counsel offered any objection to the manner in which the court clerk presented the charge to the jury.

Because the jury specifically found the defendant guilty under § 53a-60 (a) (1), we do not apply the general verdict rule and consider whether the evidence is sufficient to support a conviction based on any of the statutory grounds in § 53a-60. See *State* v. *Sanko*, 62 Conn. App. 34, 40, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 559 (2001). Instead, we treat the verdict as a finding of guilt by the jury of an intentional assault in the second degree under § 53a-60 (a) (1).

[7] Assault in the second degree under § 53a-60 (a) (1) is a specific intent, rather than a general intent, crime. See *State* v. *McColl*, 74 Conn. App. 545, 577, 813 A.2d 107, cert. denied, 262 Conn. 953, 818 A.2d 782 (2003).

[8] The long form information charging the defendant with assault in the first degree identified "a heavy wooden table" as the dangerous instrument intentionally used by the defendant to cause the victim's serious physical injury. The state was not constrained to prove that the defendant intentionally used a heavy wooden table to cause serious physical injury to the victim on the lesser included offense of assault in the second degree, as the use of a dangerous instrument is not an element of § 53a-60 (a) (1). Setting aside double jeopardy concerns, even if the state also had charged the defendant with assault in the second degree in the long form information, and specifically referenced a heavy wooden table in describing the manner in which the defendant committed the offense, the state would not have been bound to prove that the defendant intentionally caused serious physical injury to the victim by means of the table. "Our case law makes clear that the requirement that the state be limited to proving an offense in substantially the manner described in the information is meant to assure that the defendant is provided with sufficient notice of the crimes against which he must defend. As long as this notice requirement is satisfied, however, the *inclusion of additional details in the charge does not place on the state the obligation to prove more than the essential elements of the crime.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Vere C.*, 152 Conn. App. 486, 527, 98 A.3d 884 (2014).